UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DONNA SWIFT | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 13-11676-JGD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OF DECISION AND
# ORDER ON DEFENDANT'S MOTION TO DISMISS

June 17, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Donna Swift, has brought this medical malpractice action relating to treatment she received on or about February 8, 2010 from Dr. Mindy Parnes, who was employed by Harbor Health Services, Inc., d/b/a Mid-Upper Cape Community Health Center ("Harbor Health"). It is now undisputed that Harbor Health is a federally funded health center covered by the Health Centers Act, and, as a result, any claim for negligence is governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et seq*. Unfortunately, however, this was unknown to plaintiff's counsel until after the two year period for filing an administrative claim under the FTCA had passed.

This matter is presently before this court on the "Defendant's Motion to Dismiss" (Docket No. 18) brought pursuant to Fed. R. Civ. P. 12(b)(1), by which the Government

seeks the dismissal of the complaint on the grounds that there is no jurisdiction over the claim in the absence of a timely administrative claim. In response, Swift asks this court to apply the doctrine of equitable tolling because counsel's search at the Secretary of State's Office to determine the corporate identity of Harbor Health did not indicate that the company was covered under the Health Centers Act. Therefore, counsel was unaware of the need to comply with the FTCA prior to filing suit.

Unfortunately, this court finds itself constrained by the recent case of Sanchez v. United States, 740 F.3d 47 (1st Cir. 2014), to find that more diligence in ascertaining the status of Harbor Health is necessary before the doctrine of equitable tolling can be invoked. The inquiry at the Secretary of State's Office, made more than two years after the allegedly negligent act, is insufficient to toll the statute of limitations. Therefore, despite the lack of any prejudice caused by the absence of a timely administrative claim, the motion to dismiss is ALLOWED.

## II. STATEMENT OF FACTS

### Standard of Review

When ruling on a motion to dismiss for lack of subject matter jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(1), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. Heinrich v. Sweet, 62 F. Supp. 2d 282, 295 (D. Mass. 1999). The burden is on the plaintiff to prove jurisdiction. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The court may look beyond the pleadings in order to determine if it has jurisdiction over the matter. Gonzalez v. United

States, 284 F.3d 281, 288 (1st Cir. 2002), and cases cited. In fact, the district court has "very broad discretion in determining the manner in which it will consider the issue of jurisdiction." Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986).

In the instant case, while the merits of plaintiff's claim are disputed, the facts relevant to the jurisdictional issue before this court are not in dispute. They are as follows.[1]

### **Plaintiff's Medical Treatment**

Plaintiff Donna Swift is an adult woman who lives in Barnstable, Massachusetts. (Compl. ¶ 1). At all relevant times she was under the medical care of the defendant, Dr. Mindy Parnes, a licensed medical physician with an office in Hyannis, Massachusetts. (Id. ¶¶ 2-4). Dr. Parnes was employed by Harbor Health Services, Inc., a Massachusetts corporation with a trade name of Mid-Upper Cape Community Health Center. (Id. ¶ 5).

Swift suffered from seizures, which had been managed with a daily 300 mg dose of the prescription drug Dilantin. (Id. ¶ 8). On February 8, 2010, Dr. Parnes increased the dosage to 600 mg daily. (Id. ¶ 9). Swift claims that this was negligent, and that "as a direct and proximate result of the increased dosage, Swift suffered negative repercussions

---

[1] In addition to the Complaint (Docket No. 1), the facts are derived from (1) the defendant's statement of undisputed facts, as contained in its memorandum in support of its motion to dismiss ("Def. Mem.") and the exhibits thereto ("Def. Ex.") (Docket No. 19); and (2) the plaintiff's opposition to the motion to dismiss ("Pl. Opp.") and exhibits thereto ("Pl. Ex.") (Docket No. 22), as verified by the Affidavit of Oleh Podryhula, plaintiff's counsel (Docket No. 23).

including loss of balance, pain and suffering, hospitalization, a period of physical therapy and financial loss." (Id. ¶ 11). Swift went to the emergency room, and was subsequently admitted into Cape Cod Hospital on June 26, 2010 as a result of "supratherapeutic Dilantin levels." (Pl. Ex. 1). She was discharged on June 29, 2010. (Id.). As detailed below, she filed suit on February 6, 2013 against Dr. Parnes and Harbor Health.

## The Status of Harbor Health

It is now undisputed that at the relevant time, Harbor Health was "a Federally supported Health Center pursuant to the Federally Supported Health Centers Assistance Act of 1995 (42 U.S.C. § 233(g)(n))." (Def. Ex. B). As a result, Harbor Health and its employees are "provide[d] liability protection under the Federal Tort Claims Act (FTCA) for damage for personal injury, including death, resulting from the performance of medical surgical, dental, and related functions[.]" (Def. Ex. A). The United States has acknowledged that Dr. Parnes "was acting within the scope of her employment as an employee of the United States at the time of the alleged incident." (Def. Ex. B). Thus, Harbor Health and Dr. Parnes "are deemed to be federal employees acting within the scope of their employment for acts and omissions[.]" (Id.). Any claims of negligence against Harbor Health and Dr. Parnes fall within the scope of the FTCA, 28 U.S.C. §§ 1346(b) and 2671, *et seq*. Under the FTCA, a plaintiff may not maintain a tort action unless the plaintiff first files an administrative claim within two years after the claim accrued. See 28 U.S.C. § 2401(b). No such claim was filed in the instant case. (Def. Ex. C at ¶ 4).

**Efforts to Identify the Status of Harbor Health**

In the instant case, plaintiff contends that an adequate search was done in order to uncover information about whether Harbor Health was a federal facility, and since the search did not reveal such a status the doctrine of equitable tolling should apply. Specifically, plaintiff points to the fact that she requested her medical records on June 13, 2012, and that neither the request form from Mid-Upper Cape Community Health Center nor the medical reports she received revealed the federal affiliation. (See Pl. Exs. 1, 2, 3). The plaintiff also has submitted information counsel received from the Commonwealth of Massachusetts Secretary of State's Office identifying the status of Harbor Health Services, Inc. as a nonprofit corporation, and identifying its officers and directors. (Pl. Ex. 4). The document is dated April 11, 2013. (Id.). It makes no reference to any federal affiliation. This court notes, as detailed more fully below, that both of these inquiries – for medical records and to the Secretary of State's Office – were made more than two years after the alleged malpractice on February 8, 2010.

It is undisputed that there was publicly available information which identified Harbor Health as a federally affiliated entity. In particular, the Internet web site of Harbor Health Services, Inc. provides as follows: "This health center is a Health Center Program grantee under 42 U.S.C. 254B, and deemed a Public Health Service employee under 42 U.S.C. 233(g)-(n)." (Pl. Ex. 5). Lists for the Health Center Program published by the U.S. Department of Health and Human Services identify Harbor Health Services as a federal health center. See http://bphc.hrsa.gov/uds/datacenter. Furthermore, a Westlaw

search for Harbor Health Services, Inc. reveals a 2001 published decision of this court, which expressly notes that "[p]ursuant to 42 U.S.C. § 233(g), Harbor Health [Services, Inc.] was designated as a federally funded health care facility[.]" Moloney v. United States, 204 F.R.D. 16, 16 (D. Mass. 2001). However, it is not disputed that Harbor Health did not affirmatively advise plaintiff of its federal status. Nor, as noted above, did plaintiff search for this type of information before suit was filed.

### **The Litigation**

Swift commenced this action on February 6, 2013, by filing a complaint in Barnstable Superior Court against Dr. Parnes and Harbor Health Services, Inc. The action was removed to this court on July 11, 2013. On August 9, 2013, this court granted defendant's motion to substitute party. Accordingly, it dismissed Dr. Parnes and Harbor Health, and substituted the United States as the proper defendant. (Docket No. 10). Under the FTCA, the exclusive remedy for the plaintiff in this case is against the United States. See 28 U.S.C. § 2679.

Additional factual details relevant to this court's analysis are described below where appropriate.

### **III. ANALYSIS**

"Pursuant to the FTCA, a tort claim against the United States is 'forever barred' unless it is presented in writing to the appropriate federal agency within two years after the claim accrues." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) (citing 28 U.S.C. § 2401(b)). "Accordingly, it is well-settled than an FTCA claim must be

dismissed if a plaintiff fails to file a timely administrative claim." Id., and cases cited. In the instant case, it is undisputed that Swift never filed an administrative claim prior to filing suit. Therefore, "pursuant to the two-year statute of limitations, the claim is time-barred." Id.

Swift, like the plaintiff in Gonzalez, asks that this court excuse her failure to file an administrative claim. As the court in Gonzalez described when addressing the same argument the plaintiff has presented here:

> [the plaintiff] argues that this court should equitably toll the statute of limitations because she did not know, and could not have known, that the defendants were federal employees. Without this knowledge, she was unaware that the FTCA's two-year statute of limitations applied to her case, and thought instead that she must file her claim within the three years allowed under Massachusetts law. Mass. Gen. Laws ch. 260, § 2A (2000).

Gonzalez, 284 F.3d at 291. The Gonzalez court "reject[ed] this argument." Id. This court must reach the same conclusion.

An extended discussion is not necessary in light of the recent First Circuit decision of Sanchez v. United States, 740 F. 3d 47 (1st Cir. 2014). It is undeniable that "[t]he FTCA's two-year bar for presenting claims creates a trap for the unwary who fail to recognize its applicability to a specific case and thus fail to act at all within two years of accrual, or who sue in time but fail to first present the claim to the appropriate federal agency." Id. at 50. This "trap for the unwary" "arises because doctors who work at facilities that may appear to be nongovernmental may nevertheless be deemed federal employees because of the manner in which their employers receive federal funds." Id. at

54. While the First Circuit has assumed, without deciding, that equitable tolling may be available to toll the running of the FTCA's limitations period, it has nevertheless concluded that attorneys have an affirmative obligation to investigate whether the doctor/facility at issue are governed by the FTCA.  See id. at 54-55.  The Court has concluded that "[i]t's not asking too much of the medical malpractice bar to be aware of the existence of federally funded health centers that can be sued for malpractice only under the Federal Tort Claims Act[.]"  Id. at 55 (quoting Arteaga v. United States, 711 F.3d 828, 834-35 (7th Cir. 2013)).

The facts presented in Sanchez are very similar to those presented here.  In that case, as here, there was nothing in the patient's medical records which indicated that a federal facility was involved, and the hospital had not affirmatively disclosed its status.  Id.  In addition, as here, there appeared to be no evidence that the specific doctors involved were working for a public employer.  Id.  Nevertheless, while recognizing that "the federal government could do more to publicize or alleviate the statute of limitations trap created by section 233[,]" the First Circuit declined to excuse the plaintiff from the obligation to affirmatively seek out the information.  Id. at 56.  In Sanchez, like the instant case, there was information on the website of the Department of Health and Human Services that would have disclosed the status of the doctors' employer (although the information "was hardly conspicuous"), and a Lexis or Westlaw search would have revealed another FTCA case against the defendants.  Id. at 55-56.  The First Circuit determined that this information would have been sufficient to put counsel "on at least

heightened inquiry notice regarding the treating doctors' deemed-federal status" if a search had, in fact, been conducted. Id. at 55. In the absence of any affirmative actions by the defendants or government to mislead or thwart the plaintiff from ascertaining the necessary information, the First Circuit found that equitable tolling was not applicable. Id. This court has no choice but to reach the same conclusion.

Swift has attempted to distinguish the instant case from Sanchez on the grounds that her counsel did, in fact, do a search, although it was limited to the Secretary of State's Office. Under the facts of this case, however, this is a distinction without a difference. Since the inquiry was not made until after the two year statute of limitations had expired, the situation here is no different from one where the plaintiff failed to make any inquiry at all. The First Circuit has consistently rejected the argument that being "blamelessly ignorant" of the status of the potential defendants is insufficient to toll the statute of limitations. As the Gonzalez Court held, in language applicable here, "[a]lthough the plaintiff did not know the federal status of the defendants at the time of her treatment, she and her attorneys had two years to ascertain the legal status of the doctors and could easily have learned it." Gonzalez, 284 F. 3d at 291-92. Failure to make an inquiry within that time period constitutes "a clear lack of due diligence on the part of the plaintiff and her attorneys." Id. a 293. The facts presented here do not raise the issue whether some research conducted during the statutory period prior to filing suit, which did not reveal the federal status of the health care provider, would be sufficient to

toll the statute of limitations.[2] Here, in the absence of any timely research, Swift's claim is time-barred.

## IV. CONCLUSION

For all the reasons detailed herein, the "Defendant's Motion to Dismiss" (Docket No. 18) is ALLOWED.

   / s / Judith Gail Dein   <br>
Judith Gail Dein<br>
U.S. Magistrate Judge

---

[2] This court does note that the Sanchez Court did acknowledge the Third Circuit case of Santos ex rel. Beato v. United States, 559 F. 3d 189, 200 (3d Cir. 2009), where "counsel actually ran a public records search on the relevant doctors' employer" as a result of which the Court tolled the statute of limitations. See Sanchez, 740 F.3d at 56-57. Nevertheless, despite the Third Circuit decision, the First Circuit declined to "overrule our own controlling precedent here" to apply equitable tolling.